NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHRISTI LYNNE HEIM,**

          **Plaintiff,**

v.                                           Case No. 6:13-cv-1923-Orl-41KRS

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff Christi Lynne Heim seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 10, 11, and the parties' Joint Memorandum,[1] Doc. No. 15.

## PROCEDURAL HISTORY.

In 2012, Heim filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.* (sometimes referred to herein as the "Act"). She alleged that she became disabled on January 6, 2011. R. 169.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 13. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order. *Id.* at 4.

1

NOT FOR PUBLICATION

After her application was denied initially and on reconsideration, Heim asked for a hearing before an Administrative Law Judge ("ALJ"). R. 97. An ALJ held a hearing on March 11, 2013. Heim, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 32-50.

After considering the hearing testimony and the evidence in the record, the ALJ found that Heim was insured under OASDI through September 30, 2015. The ALJ concluded that Heim had not engaged in substantial gainful activity since the alleged disability onset date. R. 19.

The ALJ found that Heim had the following severe impairments: arthritis, depression, and alcohol dependence. *Id.* These impairments, individually and in combination, did not meet or equal a listed impairment. R. 20. The ALJ found that Heim had been diagnosed with stage IIB squamous cell carcinoma in April 2013, but that this condition had not imposed vocationally restrictive limitations for a period of twelve continuous months. The ALJ concluded that this disease was not a severe impairment. R. 19.

The ALJ also found that Heim would have mild limitations in social functioning and moderate limitations in activities of daily living and concentration, persistence or pace. R. 20. She had not experienced episodes of decompensation of extended duration. R. 21.

The ALJ found that Heim had the residual functional capacity to perform light work, as follows:

> [T]he claimant requires a sit-stand option at work that allows her to change positions between sitting and standing at least every 30 minutes. In addition, the claimant must avoid climbing ladders, ropes, and scaffolds and avoid concentrated exposure to vibrations, but she can otherwise engage in occasional postural motions. Moreover, the claimant can relate adequately to coworkers, the general public, and supervisors, but she is limited to performing

>     simple, routine, and repetitive tasks in an environment where workplace changes are infrequent and gradually introduced.

*Id.* In making this finding, the ALJ gave significant weight to the opinions of Val Bee, Psy.D. (Exhibit 1A), and George Grubbs, Psy.D. (Exhibit 3A), both reviewing psychologists. R. 23. The ALJ also gave great weight to the overall opinions and findings of Donna Lester, M.D., an examining physician, but limited weight to Dr. Lester's functional capacity assessment. *Id.*

The ALJ determined that Heim could not return to her past relevant work. R. 25. After considering the testimony of the VE, the ALJ found that there were unskilled, light duty jobs available in the national economy that Heim could perform, specifically ticket taker, office helper, and assembler, plastic hospital products. R. 26. Therefore, the ALJ concluded that Heim was not disabled. R. 27.

Heim sought review of the ALJ's decision by the Appeals Council. R. 9. On November 1, 2013, the Appeals Council found no reason to review the ALJ's decision. R. 1.

Heim now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Heim having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Heim's privacy to the extent possible.

Heim was born in 1959. R. 169. She had attended college. R. 61. She previously worked as a payroll accountant and as a housekeeper at a college. R. 36.

During the ALJ's hearing, Heim testified that her attention span and concentration were limited due to depression. *Id.* She also had bouts of crying spells once or twice a week. R. 36-37. She had been wandering the streets until she entered the Haven Recovery Program, a residential treatment center, the previous December. R. 37-38, 41. She had an alcohol problem, but she had been sober since December 21, 2012. R. 37, 40.

Heim also had ankle pain due to arthritis, and she sometimes fell due to a missing bone in her left ankle. R. 38. She estimated that she could stand for 5 minutes before needing to sit down. She could walk about 20 feet. R. 38-39. She had to keep her left leg elevated when sitting. She estimated that she could not lift and carry any weight. R. 39. Medication reduced inflammation but did not relieve her pain. *Id.*

Treatment records confirm that Heim referred herself to the Haven Recovery Center for treatment of alcohol and drug abuse in March 2012. R. 276, 286, 288. Heim was admitted to Stewart-Marchman-Act Behavioral Healthcare ("ACT") from April 6 to April 10, 2012. R. 307. At intake, her global assessment of functioning ("GAF") score was 48. R. 308. The diagnoses on discharge were depressive disorder NOS, alcohol dependency and a history of controlled

substances abuse. She was treated with medication. R. 307. Later, an ARNP rated Heim's GAF score at 50. R. 311.

On April 26, 2012, Heim sought treatment at Halifax Health for complaints of chronic joint pain. R. 300-01. She reported no other acute complaints. R. 301. Upon examination, the treatment provider observed that Heim was alert and oriented x 3 and that her affect and judgment were normal. R. 301-02. Mobic was prescribed for pain, when Heim could afford it. Otherwise, she was advised to use Tylenol and Advil. R. 302.

In June 2012, Dr. Bee prepared a mental functional capacity assessment after review of Heim's records. Dr. Bee opined that Heim had affective disorders and substance addiction disorders, which were severe impairments. R. 57. Dr. Bee indicated that Heim would have mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence or pace. *Id.* Dr. Bee wrote that that Heim would be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 60. Dr. Bee opined as follows: "Depression symptoms and alcohol abuse may cause occasional lapses in concentration and efficiency, but the [claimant] appears mentally capable of well structured task activity." *Id.* Additionally, Dr. Bee wrote that Heim "[a]ppears capable of at least superficially appropriate social interaction with sobriety and treatment compliance," and that she "[m]ay benefit from further support with suitable goal setting." R. 61.

NOT FOR PUBLICATION

In August 2012, a treatment provider at ACT noted that Heim drank 20 beers 48 hours earlier. Her mood was depressed and her affect blunted and constricted. Her impulse control was limited. Her GAF score was 46. R. 324.

On September 18, 2012, Heim again sought treatment at Halifax Health for medication for hypertension. R. 328. Her mental status examination was normal. R. 332.

In September 2012, Dr. Grubbs prepared a mental functional capacity assessment after review of Heim's records. He concurred with Dr. Bee that Heim's mental impairments would result in mild limitations in activities of daily living and social functioning and moderate difficulties in concentration, persistence or pace. R. 71. He opined that Heim would be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. However, he opined that Heim "appears mentally capable of well structured task activity . . . [and] of at least superficially appropriate social interaction with sobriety and treatment compliance," and that she "[m]ay benefit from further support with suitable goal setting." R. 75-76.

In November 2012, a treatment provider at ACT opined that Heim had a mood disorder with a GAF score of 46. Her impulse control was limited and her affect constricted. Her insight and judgment were fair. R. 356.

On February 25, 2013, Karla McNish, M.D., treated Heim at Halifax Health for right elbow pain among other things. R. 396. Dr. McNish prescribed ibuprofen. R. 397. Heim indicated that her depression was much improved with medication. R. 400.

In approximately March 2013, a pap smear revealed that Heim had stage IIb invasive squamous cell carcinoma of the cervix. A CT scan showed no evidence of metastatic disease. R. 431-32. Kelly Molpus, M.D., noted in a treatment record that Heim was asymptomatic. R. 443. Dr. Molpus explained to Heim that there were two broad treatments for cervical cancer: surgery and radiation with weekly chemotherapy. Dr. Molpus told Heim that she needed additional information about the tumor to determine the treatment needed. R. 444-45.

Dr. Molpus took a biopsy of the tumor. R. 437-39. On April 18, 2013, Charles Hechtman, M.D., recommended initiating chemo-radiation while awaiting the pathological opinion regarding the biopsy that had been taken. R. 436.

Meanwhile, on April 13, 2013, Dr. Lester examined Heim at the request of the state disability office. Heim complained of pain in her ankle, memory loss from depression, and a recent diagnosis of cervical cancer, among other things. Heim estimated that she could stand for 5 to 10 minutes for up to 2 hours in an 8-hour period. She could walk 20 to 50 feet, although Dr. Lester noted that Heim could walk from the parking lot into the office and then back out. She could sit for 30 minutes. She could lift up to a gallon of fluids. R. 420. Dr. Lester observed that Heim walked with a normal gait and had no difficulty getting on and off the exam table and up and out of a chair. There was some limitation of range of motion in her left ankle. She was able to squat completely to the floor. Her train of thought was appropriate and she was able to follow simple directions. R. 422.

In a Medical Source Statement Of Ability To Do Work-Related Activities (Physical), Dr. Lester opined that Heim could lift and carry up to 20 pounds frequently and up to 50 pounds occasionally. R. 424. Heim could sit about 2 hours at a time and sit a maximum of 6 hours a

day. She could stand or walk each for about 30 minutes at a time up to 2 hours each a day. R. 425. She could use her right foot continuously and her left foot frequently. R. 426. She could occasionally climb stairs, ramps, ladders or scaffolds. R. 427. She could occasionally work at unprotected heights. R. 428.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Heim's education and work experience who could do the following:

> [L]imited to work at the light exertional level with a 30 minute sit stand option, occasional climbing of ramps and stairs, no climbing of ladders, ropes and scaffolds, occasional other postural activities, balancing, stooping, kneeling, crouching and crawling. The individual should not have concentrated exposure to vibration. From a mental standpoint they would be limited to performing simple, routine, repetitive tasks. They would relate adequately to coworkers, the general public, and supervisors. The changes in the workplace should be infrequent, gradually introduced.

R. 44-45.

The VE testified that this person could not perform Heim's past relevant work. R. 45. The VE opined that this person could perform jobs requiring a light level of exertion with a specific vocational preparation ("SVP") time of 2, specifically office helper (DOT 239.567-010), assembler, plastic hospital products (DOT 712.687-010) and ticket taker (DOT 344.667-010), which jobs were available in the national economy. R. 45-46. If the hypothetical person would be off task 25% of the workday, there would be no work that the person could perform. R. 46. Similarly, if the hypothetical person would miss 2 days of work a month, there would be no work the person could perform. R. 46-47. The VE testified that his opinion did not conflict with the *Dictionary of Occupational Titles* ("DOT"). R. 47.

NOT FOR PUBLICATION

## ANALYSIS.

Heim raises three assignments of error. She contends that the ALJ erred by failing to develop the record regarding functional limitations that would arise from her diagnosis of stage IIb squamous cell carcinoma of the cervix. She submits that the ALJ did not apply the correct legal standards to the opinions of Dr. Bee and Dr. Grubbs. Finally, she argues that the ALJ erred by relying on the testimony of the VE because the VE's testimony differed from the *Dictionary of Occupational Titles*. I will address these assignments of error in turn.

*Development of the Record.*

Heim was diagnosed with cervical cancer after the ALJ's hearing. The ALJ was aware of the diagnosis when he wrote his decision. In his decision, the ALJ wrote as follows:

> I find that additional objective testing is required to determine the severity of the claimant's carcinoma and its vocational impact because it is not evident from the current record. Furthermore, based on the current record, I conclude that the claimant's stage IIB squamous cell carcinoma has not had more than a minimal effect on the claimant's ability to perform work-related activities and is not "severe" . . . .

R. 19. Heim argues that because the ALJ recognized that he needed more information, he had a duty to develop the record to obtain that additional information before rendering his decision. The Commissioner responds that Heim has not shown prejudice from the failure to develop the record because the ALJ was only required to determine Heim's functional capacity as of the date of the decision, in this case June 20, 2013.

An ALJ has a duty to develop a full and fair record even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The SSA regulations provide that the SSA may purchase a consultative examination when there is an indication of a

change in the claimant's condition "that is likely to affect your ability to work, but the current severity of your impairment is not established." 20 C.F.R. § 404.1519a(b)(4). The "likely to affect" language in this regulation supports Heim's argument that the ALJ was required to consider how cancer and treatment for that condition might limit her ability to work in the future.

Moreover, Listing 13.00 of the SSA regulations specifically requires the ALJ to evaluate malignant tumors by considering the duration, frequency and response to treatment, including surgery, irradiation and chemotherapy. 20 C.F.R. 404, Subpt. P, App. 1 § 13.00(B)(3). The record before the ALJ indicated that Dr. Hechtman recommended on April 18, 2013, that Heim begin chemo-radiation without waiting to receive a pathological opinion regarding the biopsy. This recommendation was made more than 2 months before the ALJ issued his decision. The ALJ failed in his duty to consider the duration, frequency and response to this anticipated treatment by failing to recontact the treatment providers or, if necessary, order a consultative examination by an oncologist to determine how the proposed treatment would affect Heim's ability to work and for how long.

When, as here, an ALJ recognizes an evidentiary gap in the record but fails to develop the record by recontacting the treating source or obtaining a consultative examination, the absence of this evidence is prejudicial. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam); *see also Brown v. Astrue*, No. 1:11-cv-1000-MJD-JMS, 2012 WL 2376069 (S.D. Ind. June 22, 2012) (discussing legal requirements for evaluating limitations arising from a cancer diagnosis). Therefore, I recommend that the Court find that the ALJ's decision is due to be reversed based on this assignment of error.

NOT FOR PUBLICATION

*Functional Capacity Assessments by Dr. Bee and Dr. Grubbs*.

Both Dr. Bee and Dr. Grubbs opined that Heim would be moderately limited in the ability to complete a normal workday and workweek due to psychologically based symptoms. They also both opined that Heim would have moderate limitations in the ability to maintain attention and concentration for extended periods and set realistic goals and make plans independently of others. R. 60-61, 75-76. Heim contends that the ALJ did not discuss these limitations or include them in the RFC assessment even though he gave great weight to these opinions.

The record reflects that the ALJ did include these functional limitations in the RFC assessment. Both Dr. Bee and Dr. Grubbs opined that despite these moderate limitations, Heim appeared mentally capable of well-structured task activity with support for suitable goal setting. The ALJ included these limitations in the RFC by limiting Heim to work performing simple, routine and repetitive tasks in an environment where workplace changes are infrequent and gradually introduced. R. 21.

Reliance on the narrative assessment of Heim's ability to work despite moderate limitations is appropriate. *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 50-51 (11th Cir. 2012) (per curiam) (unpublished decision cited as persuasive authority). Therefore, I recommend that the Court find that this assignment of error is not well taken.

*Testimony of the VE.*

In her final assignment of error, Heim asserts that the ALJ erred in relying on the VE's testimony at step five of the sequential evaluation because the VE's statement that his testimony was consistent with the *Dictionary of Occupational Titles* was incorrect. Specifically, Heim argues that the limitation to performance of simple, routine, repetitive tasks is inconsistent with

jobs that require a reasoning level of 2, which is defined as the ability to carry out detailed instructions.

The Commissioner responds that Social Security Ruling 00-4p states that the relevant reference to determine unskilled work is the specific vocational preparation time for each job. Ruling 00-4p states that unskilled work corresponds to an SVP of 1-2.  SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).  Each of the jobs identified by the VE at step five of the sequential evaluation have an SVP of 2 and are, therefore, unskilled jobs.

Some judges have distinguished unskilled work from simple work.  *See, e.g.*, *Wood v. Comm'r of Soc. Sec.*, No. 6:09-cv-1090-Orl-GJK, 2010 WL 1408404, at *11-12 (M.D. Fla. Apr. 2, 2010).  In *Wood*, the ALJ did not ask the VE to assume mental functional limitations.  *Id.* at *10.  In contrast, in the present case, the ALJ did ask the VE to assume mental functional limitations, specifically a limitation to simple, routine, repetitive tasks not merely unskilled work. Under this set of facts, the VE testimony controls even if it conflicts with the DOT.  *Jones v. Apfel*, 190 F3d 1224, 1229-30 (11th Cir. 1999) ("[W]hen the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT.").

Accordingly, I recommend that the Court find that this assignment of error is also not meritorious.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the case be **REMANDED** for further proceedings.  I further **RECOMMEND** that the Court direct

NOT FOR PUBLICATION

the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 5th day of December 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record